Eugene R. Wolin, J.
This proceeding involves the Times Square area of this city which in recent times has been changed from the “ Great White Way ” of world-wide fame to an area presently shunned and avoided by a vast number of New Yorkers as well as tourists who visit this-great metropolis. Where once it was the desire of peoples everywhere to enjoy the entertainment and cuisine offered in its theatres, restaurants, sporting events and other cultural pleasures, we now find ithe area practically deserted after the daylight hours pass. The case before the court is part of the problem facing us.
This summary proceeding was instituted by the City of New York under the provisions of section 715 and subdivision 5 of section 711 of the Real Property Actions and Proceedings Law, seeking a judgment of eviction of the tenant respondent.
Section 711 of the Real Property Actions and Proceedings Law, which governs the removal of tenants from premises when there exists a landlord-tenant relationship, states in part that a tenant “ shall not be removed from possession except in a special proceeding. A special proceeding may be maintained under this article upon the following grounds: * * * 5. The premises, or any part thereof, are used or occupied as a bawdy-house, or house or place of assignation for lewd persons, or for purposes of prostitution, or for any illegal trade or manufacture, or other illegal business.”
Section 715 of the Real Property Actions and Proceedings Law which governs the grounds and procedure for removal of tenants for illegal use, states, in pertinent part, that: “ An owner or tenant, including a tenant of one or more rooms of an apartment house, tenement house or multiple dwelling, of any premises within two hundred feet from other demised real property used or occupied in whole or in part as a bawdy-house * * * or for purposes of prostitution * * * or any duly authorized law enforcement agency * * * of a subdivision [of the State], under a duty to enforce the provi *695 sions of the penal law, may serve personally on the owner or landlord of the premises so used or occupied, or upon his agent, a written notice requiring the owner or landlord to make an application for the removal of the person so using or occupying the same. If the owner * * * does not make such application within five days thereafter * * * [the] law enforcement agency giving the notice may bring a proceeding under this article for such removal as though the Petitioner were the owner * * * Proof of the ill repute of the demised premises or of the inmates thereof or of those resorting thereto shall constitute presumptive evidence of the unlawful use of the demised premises (Emphasis added.)
It is to be noted that section 715 of the Real Property Actions and Proceedings Law, in addition to setting forth the grounds and procedure for removal of tenants for illegal use, sets forth the evidence and proof required “ of the unlawful use of the demised premises. ’ ’
This proceeding was commenced under the authority of section 715 of the Real Property Actions and Proceedings Law. The petitioner, the Corporation Counsel of the City of New York instituted this proceeding against the operators of the Fulton Hotel in order to remove them from possession and control of the subject premises because of the open and notorious use thereof by persons of ill repute for purposes of prostitution. The Fulton Hotel is located at 264-266 West 46th Street, New York, New York. The owner of the premises was duly served with notice pursuant to section 715 of the Beal Property Actions and Proceedings Law but failed to take any steps to remove the operators of the Fulton Hotel. He had totally ignored the notice served upon him.
The proof before this court established that between July 24, 1972 and October 17, 1973, 59 arrests were made inside the hotel premises. Fifty-eight of these arrests were for prostitution, offenses which resulted in either a guilty plea or a conviction of the defendant. The hotel desk clerk was arrested on March 7, 1973. He resisted arrest and assaulted the arresting officer who was in the process of arresting him and a prostitute. The desk clerk subsequently pleaded guilty to assaulting the police officer.
Several of the police officers, attached to the Public Morals Division, who made arrests were called as witnesses. In substance, they testified that they were solicited by prostitutes in the vicinity of the Fulton Hotel. That the selection of the sex act situs was made by the prostitute who led them to the Fulton *696 Hotel. The arrests were then made on the stairs or in the lobby of the hotel. Their testimony was not controverted. From all the testimony, it can clearly be inferred that the officers were directed to the Fulton Hotel by the prostitutes because it was a haven for them.
The record of convictions at the premises also includes that of the president of the Fulton Renting Corp. which operates the Fulton Hotel under a lease. He was convicted of permitting prostitution. (Penal Law, § 230.40.)
The manager of a reputable hotel diagonally across the street from the subject premises testified that he had worked at his hotel several years; that he had often seen girls soliciting men on the street and then take them into the Fulton Hotel. He further testified that the reputation of the Fulton Hotel in the community is that it is a “ whorehouse.”
The current manager of the hotel was called in behalf of the Fulton Hotel. He testified that he was aware of the problems in the area, but follows certain guidelines before he rents a room to a man and woman. Primarily, his renting actions depend on how they look to him. In any event, he has never called on the police for any assistance.
Other witnesses for the respondent included a woman resident of the hotel for 20 years, a plumber and an employee of a restaurant across the street from the hotel. Of course, none of these persons had witnessed any arrests in the hotel. The respondents suggest, therefore, that they were not aware of the arrests which were made in or about the hotel.
The facts in this case indicate that 58 arrests for prostitution were made in and about the premises within a period of only 15 months. It would seem that during that time someone was bound to sit up and take notice of what was going on in the hotel. There comes a time when one must look, and when he looks, he must see. Convenient indifference should not be confused with pardonable ignorance. “None of us can feign ignorance of the weakness or the wickedness of life, and here the facts of life are the facts of law, and guide the court.” (Hauer v. Manigault, 160 Misc. 758, 759.)
The tenant respondent seeks to defeat these proceedings because there is no proof that any illegal acts were committed in the hotel. However, section 711 of the Real Property Actions and Proceedings Law does not require proof of the commission of illegal acts. It does provide a remedy for the illegal use of the premises, and it is sufficient if the acts and conduct complained of warrant the inference of acquiescence in an occu *697 pancy contemplating the prohibited purposes (Hauer v. Manigault, supra). Under the circumstances, presented in this case, it would be ludicrous to require photographs, motion pictures or eyewitnesses to sexual acts before the tenant could be ousted from premises.
It is of interest to note that the respondents seek the dismissal of this summary proceeding on the ground that there is a prior action pending in the Supreme Court. In connection therewith, there was admitted into evidence respondent’s Exhibit B which is a certified copy of the summons and complaint in that action. The Supreme Court action was brought for injunctive relief pursuant to sections 2320-2333 of the Public Health Law of the State of New York. That action is not based on any of the 59 convictions which are the basis of this summary proceeding. The allegations in the prior action refer to 31 prior arrests which resulted in 14 convictions for prostitution offenses in and about the Fulton Hotel between January 11,1971 and July 14,1972.
That action was brought in order to obtain a temporary injunction to restrain the Fulton Hotel from its illegal operations. This summary proceeding is to evict the operators of the hotel on account of other, further and more arrests and convictions for prostitution offenses.
Since there has not been a judgment in the prior action, its pendency cannot be set up as a defense in this proceeding which seeks different relief. (National Fire Ins. Co. of Hartford v. Hughes, 189 N. Y. 84.)
The respondent Fulton Renting Corp. asserts that section 715 of the Real Property Actions and Proceedings Law is unconstitutional as it adversely affects the rights of the hotel to continue in occupancy. The argument has no merit. If petitioner shows that the respondent’s possession and use is illegal, then there is no constitutional right to continue in occupancy. “ If the nuisance exists, he must abate it at his peril, or answer for the consequences.” (Tenement House Dept. of City of N. Y. v. McDevitt, 215 N. Y. 160.)
The respondent further claims that the petitioner has failed to prove that the subject premises is not a multiple dwelling. In that connection, it is sufficient to say that the petitioner seeks to evict the respondent from its commercial leasehold of the premises. The respondent corporation does not occupy rooms for living purposes, but rents rooms for profit and is thus engaged in business. Moreover, this proceeding is not between a landlord and tenant but by a public official authorized by law *698 to exercise the police power of this State in seeking to abate alleged unlawful activities.
Through its proof, respondent has urged that within the past two or three years, the area .surrounding the. Fulton Hotel has been infested with drug addicts, massage parlors, peep shows, pornographic movies, ‘1 pimps ’ ’ and prostitutes. These activities and establishments threaten the security, economic potential and appearance of one of the most popular sections of the city. The fact that the neighborhood has so deteriorated is no license for anyone to permit a rotten situation to worsen and this court will not tolerate or permit the continuance of the degeneration of the area.
The hotel managers or desk clerks are acquainted with those prostitutes who regularly use the hotel for their illegal purposes. Each registration clerk can do infinitely more than the individual plain-clothes police officer to assist in eliminating this mess. However, it certainly appears that they choose to foster, aid and abet the practice. Although “ the oldest profession in the world” will continue to flourish in good times or bad, there should be definitive action taken to halt the open and notorious prostitution which now pervades this area. The public is not blind and neither is the court.
Upon all the evidence, the court finds that the petitioner has proved a condition of permanence sufficient to constitute a use of the premises for the purposes of prostitution which justifies this proceeding to remove the operators of the Fulton Hotel.
Accordingly, the petition is granted and warrant will issue pursuant to section 715 of the Real Property Actions and Proceedings Law directing the removal of the tenant respondent Fulton Benting Corp. from the possession of premises 264-266 West 46th Street, New York, New York.